UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ORION RESERVES LIMITED PARTNERSHIP, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 04-0791 (RCL) |
| GALE A NORTON, SECRETARY, U.S. DEPARTMENT of the INTERIOR, et al. | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

This case comes before the Court on Plaintiff's Motion [26] for Summary Judgment filed on behalf of Orion Reserves Limited Partnership ("Orion"), and Federal Defendants' Cross Motion [27-1] for Summary Judgment filed on behalf of Gale A. Norton, Secretary of the Department of the Interior ("Interior"), Kathleen Clarke, Director of the Bureau of Land Management ("BLM"), and Sally Wisely, Utah State Director of BLM. Plaintiff filed a Complaint [1] seeking judicial review under the Administrative Procedure Act ("APA") and otherwise of an Interior Board of Land Appeals ("IBLA") decision affirming a declaration by the Utah State Office BLM that 156 oil shale mining claims owned by plaintiff were abandoned and void for failure to substantially comply with the assessment work requirements of the Mining Law of 1872, 30 U.S.C. § 28 (2000) ("the Mining Law"), and § 37 of the Mineral Leasing Act of 1920, 30 U.S.C. § 193 (2000) ("the Leasing Act").

For the reasons set forth herein, the plaintiff's motion will be granted and defendants'

cross-motion will be denied.

## I.  LEGAL BACKGROUND

### A.  The Mining Law of 1872

The Mining Law declared all valuable mineral deposits in public lands of the United States open to exploration, occupation, and purchase "according to the local customs or rules of miners in the several mining-districts." 30 U.S.C. § 22 (2006). Mining claims may be maintained indefinitely, as long as the locator complies with federal, state, and local requirements. 30 U.S.C. §§ 26, 28. The Mining Law requires that "until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year." 30 U.S.C. § 28. This annual work requirement is commonly referred to as assessment work. *See* Black's Law Dictionary 125 (8th ed. 2004). Failure to perform yearly assessment work results in the claim being "open[ed] to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location." 30 U.S.C. § 28.

### B.  The Mining Leasing Act of 1920

In 1920, Congress enacted the Mineral Leasing Act of 1920, 30 U.S.C. § 181 *et. seq.*, which "completely changed the national policy over the disposition of oil shale lands." *Hickel v. Oil Shale Corp.*, 400 U.S. 48, 51 (1970). The Leasing Act closed oil shale (among other minerals) lands to location and acquisition of title under the Mining Law, but left them open to lease through the Secretary of the Interior. 30 U.S.C. § 241(a). Existing claims, initiated under

the Mining Law prior to February 25, 1920, were grandfathered in under the Savings Clause of the Leasing Act, which provided that those claims "thereafter maintained in compliance with the laws under which initiated (the Mining Law) . . . may be perfected under such laws, including discovery." 30 U.S.C. § 193.

## II. FACTUAL BACKGROUND

Between 1917 and 1919, plaintiff's predecessors-in-interest located and initiated 156 unpatented oil shale mining claims in Utah, under the Mining Law. (Pl.'s Mot. 1.)  In 1988, later predecessor-in-interest Frederick H. Larson ("Larson") filed an application to patent the claims with the Utah BLM.[1] (*Id.*)  In 1991, Larson filed suit in the U.S. District Court for the District of Utah to compel the Secretary of the Interior to complete the processing of the patent applications. (Def.'s Mot. 14.)  This case was dismissed as moot, in 1993, after BLM issued First Half of Mineral Entry Final Certificates in 1992. (*Id.*)  In 1994, Larson transferred the claims to Crippled Horse Investments Limited Partnership ("Crippled Horse"). (*Id.*)  Crippled Horse filed another suit to compel the Interior to complete processing of the patent applications in 1996, which was ultimately stayed after BLM agreed to file status reports every 60 days regarding its progress. (*Id.*)

In 1997, defendants filed an adjudicative contest complaint against two of the mining claims, asserting that they were invalid for lack of discovery of valuable minerals and failure to meet assessment work requirements. (Pl.'s Mot. 1.)  Later that year several of the claims were

---

[1] Larson, in 1989, would separate this application into nine applications at the request of the Utah BLM. (Pl.'s Mot. 1.)

declared voided on the grounds that the defendants had already declared them "null and void" for want of assessment work during 1931, in 1932-1933.  By June of 1997, however, the Utah State BLM rescinded that decision without explanation.  (Compl. 16.)

In 1999, BLM researched Uintah County (where the claims are located) records for affidavits, required by state law, which demonstrate that the assessment work required by the Mining Law was conducted.  (Def.'s Mot. 15.)  BLM found that the claims lacked affidavits proving the completion of annual assessment work for periods ranging from fifteen to thirty-five years between 1932 and 1970.  (*Id.*)  Based on the absence of affidavits, on September 2, 1999, BLM inferred that the assessment work had not been completed and issued a decision declaring all 156 oil shale claims void.  (*Id.*)  There are no allegations or evidence in the record that the required assessment work was not resumed and completed annually for the near thirty years between 1970 and BLM's decision.

On October 4, 1999, Crippled Horse and Larson's Estate appealed BLM's decision to IBLA. (*Id.* at 16.)  IBLA affirmed and the plaintiff filed a complaint on May 14, 2004, challenging IBLA's decision and seeking an order compelling the defendants to process plaintiff's patent applications.  (*Id.* at 17-18.)

### III. DISCUSSION

**A.  Legal Standards**

    **1.  Standard of Review**

The Administrative Procedure Act provides that the reviewing court shall, "hold unlawful and set aside agency action, findings, and conclusions found to be – arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). It is a highly deferential standard of review that presumes the agency action to be valid. *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). The court must affirm the agency's decision if a rational basis for that decision exists, even if the court disagrees. *Bubala v. Lujan*, 1991 U.S. Dist. LEXIS 1211, 4-5 (D.D.C. 1991) (citing *Environmental Defense Fund, Inc.*, 657 F.2d at 283)). While deferential to agency action, the courts' review of the facts must be searching and careful; the agency's action must be based on a consideration of relevant factors. Id. (citing *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416). The scope of review is usually confined to the full administrative record before the agency at the time the agency action was taken. *Bubala*, 1991 U.S. Dist. LEXIS 1211, 4-5 (D.D.C. 1991) (citing *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 825)).

**2. Summary Judgment**

The Court must grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). While the moving party bears the burden of demonstrating a lack of genuine issues of material fact, *Rule 56* further requires that the non-moving party "go beyond the pleadings by [entering evidence] showing there *is* a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986) (emphasis added). The presence of disputed facts by itself is insufficient to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). An issue of material fact qualifies as genuine only if there is evidence on which a jury could base a verdict for the non-moving party.

*Id.* at 248.

If the moving party is successful, that party is entitled to summary judgment as a matter of law, if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In making this determination, the Court must view all inferences "in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### B. Statute of Limitations

Plaintiff asserts a convincing argument that, by application of 28 U.S.C. § 2462, IBLA's decision is barred by statute of limitations. (Pl.'s Mot. 16-17.)[2] The statute provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462. Unfortunately, while defendant's substantive arguments are not persuasive (Def.'s Mot. 20-22.),[3] plaintiff has waived this argument by failing to first present it before the

---

[2]     Plaintiff also asserts a laches defense. (Pl.'s Mot. 35-36.) However, "[n]o rule is better established than that the United States are not bound by limitations or barred by laches where they are asserting a public right." *Illinois C. R. Co. v. Rogers*, 253 F.2d 349, 353 (D.C. Cir. 1958). While the court finds it outrageous and inexcusable that the defendants' challenges to the oil shale claims were made approximately twenty-nine years after any alleged lapses in assessment work, and after the plaintiff's predecessors-in-interest filed suit twice to compel processing of their patent applications, there is no basis on which to deviate from the rule barring the use of laches against the government where it is acting in the public interest.

[3]     Defendant's attempt to construe this forfeiture action as outside the realm of the statute by arguing that it is not punitive by nature is disingenuous and inaccurate. The Supreme

agency.  It is well-settled that objections to agency proceedings must be presented to the agency "in order to raise issues reviewable by the courts."  *See Salt Lake Community Action Program v. Shalala*, 11 F.3d 1084, 1087 (D.C. Cir. 1993) (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)); *see also Foundation on Economic Trends v. Heckler*, 756 F.2d 143, 156 (D.C. Cir. 1985); *Washington Ass'n for Television & Children v. FCC*, 712 F.2d 677, 680 (D.C. Cir. 1983).  The policy underlying the waiver rule is that "judicial review might be hindered by the failure of the litigant to allow the agency to make a factual record, exercise its discretion, or apply its expertise."  *See Salt Lake Community Action Program*, 11 F.3d at 1087 (citing *Railroad Yardmasters of America v. Harris*, 721 F.2d 1332, 1338 (D.C. Cir. 1983)).

Further, this statute of limitations specifically applies at the agency level.  The language of § 2462 states that it applies to an "action, suit or proceeding."  "[P]roceeding" refers not only to judicial business, but also to administrative proceedings before agencies.  *Samedan Oil Corp. v. Deer*, 1995 U.S. Dist. LEXIS 10158 (D.D.C. 1995).  Plaintiff's rationalizations for the failure to present this issue to the agency are unavailing.  Therefore, as the statute of limitations expressly applies to agency determinations, the plaintiff was obligated to raise the issue before the IBLA.  Having failed to do so, plaintiff waived judicial review of this issue.

---

Court indicated that invalidation of claims based on "noncompliance with the requirements of law" qualifies as a forfeiture of the claims.  *United States v. Locke*, 471 U.S. 84 (1985) (describing the common law distinction between abandoned and forfeited property and later stating, "Legislatures can enact substantive rules of law that treat property as forfeited under conditions that the common-law would not consider sufficient to indicate abandonment.")(citations omitted).  Further, the D.C. Circuit has specifically indicated that this statute of limitations applies to agency actions, stating, "[T]here is no discernible rationale for applying § 2462 when the penalty action or proceeding is brought in a court, but not when it is brought in an administrative agency."  *3 M Co. v. Browner*, 17 F.3d 1453, 1457 (D.C. Cir. 1994).

**C. Defendants' Retroactive Application of Regulations**

"Retroactivity is not favored in the law . . . a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms. " *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (U.S. 1988) (where retroactive application of a cost-limiting rule was not permitted). Retroactivity takes place where the "*past* legal consequences of past actions" are altered. *Bowen*, 488 U.S. at 219 (Scalia, J. concurring) (as opposed to secondary retroactivity which involves a prospective rule which nonetheless effects past transactions).

The defendants admit that until 1993 (twenty-three years after the alleged lapses of assessment work), Interior's own regulations allowed for noncompliant claimants to remedy assessment work performance failures by resuming work. (Def.'s Mot. 38 (citing 43 C.F.R. § 3851(b) (2003).) Defendants assert that the 1993 amendment to its regulations "merely reflects the 1970 *Hickel* decision", which Interior interprets as having terminated the resumption doctrine as it applies to oil shale claims.[4] (*Id.*) Now, the defendants are attempting to invalidate plaintiff's claims for lapses in assessment work that occurred before either the amended regulation or the *Hickel* decision came into existence. (Def.'s Mot. 15.) "The legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Regions Hosp. v. Shalala*, 522 U.S. 448, 456 (1998) (quoting *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (SCALIA, J., concurring)) (citations omitted). The

---

[4] Note that this court specifically does not reach the issue of whether this is a reasonable interpretation of *Hickel*.

defendants' application of regulatory changes made subsequent to the alleged assessment work lapses is unreasonable as it radically alters the legal consequences for plaintiff's past actions.

A regulation is being applied retroactively when it "impairs rights a party possessed when he acted, increases a party's liability for past conduct, or imposes new duties with respect to transactions already completed." *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 859 (D.C. Cir. 2002) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)).  In the present case, application of the 1993 amendment or the agency's contemporary interpretation of the 1970 *Hickel* decision impairs the plaintiff's right of resumption which was not successfully contested at the time of the work lapses, on which the plaintiff relied (having resumed work for nearly thirty years after 1970).  Further, this retrospective application increases the plaintiff's liability for past work lapses.  At the time the alleged assessment work lapses occurred, it was understood that resumption of work before action was brought by the government to invalidate the claims would remedy these failures.  As it impairs rights the plaintiff possessed at the time of the alleged conduct and increases the plaintiff's liability for that past conduct, the application of the amended regulation is impermissibly retroactive.

The defendants argue that the changes in policy are immaterial because once the plaintiff failed to comply with the assessment work requirements under the Mining Law, the plaintiff could no longer access the resumption provisions of the regulation (or the Mining Law) to preserve the claims. (Def.'s Mot. 35.)  Essentially, the defendants argue that plaintiff could not rely on the specific language of the statute or the accompanying regulation, allowing preservation through resumption, because plaintiff had already lost the benefit of the regulation's opportunity to resume work by allowing the work to lapse in the first place. (*Id.*)  This is a startling example

9

of circular logic, that flies in the face of the obvious intent of the Mining Law and the Interior's regulation (previous to the 1993 amendment).

Defendants, relying on *Exxon Mobil Crop. v. Norton*, next urge that because "the *Hickel* court [] conclud[ed] that the United States 'had, and has, subject matter jurisdiction over contests involving the performance of assessment work,'" despite an Interior regulation to the contrary, the existence of a regulation allowing resumption of assessment work should not deter this Court from denying plaintiffs the benefit of resumption. 206 F.Supp.2d 1085, 1091 (10th Cir. 2002) (citations omitted). However, neither the discrepancy between the regulation and the court's ultimate conclusion nor retroactivity were raised in *Hickel*. Therefore, the Supreme Court never addressed the issue.

Further, Interior was free to announce its new policy through either rulemaking or adjudication. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, (1974) (holding that an agency's decision to choose either rule-making or case-by-case adjudication is subject to reversal only if the agency committed an "abuse of discretion or a violation of [law]."). Interior proceeded under rulemaking, a sound decision given the strong policy reasons preferring rulemaking over adjudication to set forth new policies when feasible:

> Rule-making is an essential component of the administrative process and indeed is often the preferred procedure for the evolution of agency policies. Rule-making permits more precise definition of statutory standards than would otherwise arise through protracted, piecemeal litigation of particular issues. It allows all those who may be affected by a rule an opportunity to participate in the deliberative process, while adjudicatory proceedings normally afford no such protection to nonparties. *And because rule-making is prospective in operation and general in scope, rather than retroactive and condemnatory in effect, interested parties are given advance notice of the standards to which they will be expected to conform in the future, and uniformity of result is achieved.*

*Christopher Shays & Representative v. FEC*, 2006 U.S. Dist. LEXIS 13632 (D.D.C. 2006) (quoting *Trans-Pac. Freight Conference of Japan/Korea v. Fed. Mar. Comm'n*, 650 F.2d 1235, 1244-45 (D.C. Cir. 1980)) (emphasis added). Having exercised sound discretion in proceeding under rulemaking, Interior may not now turn around and apply the rule ("prospective in operation") to conduct that preceded it. *Id*.

The critical question for determining whether a regulation is being applied in an impermissibly retroactive manner is whether the new interpretation "changes the legal landscape." *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 859 (D.C. Cir. 2002) (quoting *Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 423 (D.C. Cir. 1994)) (citations omitted). In the present case, there is no question that Interior's interpretation of *Hickel* and subsequent regulatory changes represent changes to the law plaintiffs (and their predecessors-in-interest) operated under previous to 1970. While it is certainly within the scope of the agency's informed discretion to update its regulations based on evolving interpretations of case law and statutory language, it is arbitrary and capricious to apply these new policy interpretations and regulations to past conduct because it forecloses the plaintiff's opportunity to avoid adverse consequences by operating in conformity with the agency's position.

Accordingly, while on its face the current version of 43 C.F.R. § 3851(b) does not operate in retrospect, the agency's application of the regulation (or the policy changes which precipitated its amendment) to past conduct is impermissibly retroactive. Therefore the challenges to plaintiff's mining claims based on that application must fail as arbitrary and capricious.

## IV. CONCLUSION

For the foregoing reasons, this Court concludes that the plaintiff has met its summary judgment burden.  Accordingly, and for the reasons stated herein, Orion's motion for summary judgment will be GRANTED and defendants' cross-motion will be DENIED.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, March 31, 2006.