UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ORION RESERVES LIMITED PARTNERSHIP, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )  Civil Action No. 04-791 (RCL) |
| DIRK KEMPTHORNE, *et al*. | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM & ORDER**

I.   INTRODUCTION

This matter comes before the Court on plaintiff's Memorandum [43] Respecting Remedy filed on behalf of Orion Reserves Limited Partnership ("Orion"). Previously, this Court granted plaintiff's Motion [26] for Summary Judgment and denied defendants' Cross Motion [27-1] for Summary Judgment. In addition, this Court ordered the parties to file memoranda respecting what relief, if any, the Court should award. For the reasons set forth below, this Court GRANTS IN PART and DENIES IN PART plaintiff's Request [43] Respecting Remedy.

II.   BACKGROUND

In 1988, Orion's predecessor in interest, Frederick H. Larson, filed a patent application for 156 oil shale mining claims totaling 23,371 acres. (Defs.' Mem. in Opp'n at 7.) The following year, Larson amended the original patent application by dividing it into nine separate patent applications. (Pl.'s Mem. Respecting Remedy at 2.) Defendants, however, did not process the applications for two years because of an administrative moratorium on the processing

1

of oil shale mining patents. (*Id.* at 4.)

On account of the moratorium, Larson filed suit against the Department of the Interior ("Department") in the U.S. District Court for the District of Utah to compel the Department to process his patent applications in 1991. (*Id.*) Subsequently, defendants rescinded the moratorium after the 10th Circuit declared that the moratorium violated the mining laws. (*Id.* at 5.) Following the revocation of the administrative moratorium, however, Congress placed a funding moratorium on the processing of all oil shale mining claims until after October 1, 1992. (*Id.*) Larson then amended his complaint to challenge this new moratorium. (*Id.*) Defendants moved to dismiss, but the court found that even with the funding prohibition in place, defendants had to process Orion's applications. (*Id.*) The Department then began to process the applications and issued First Half Final Certificates for all nine of Orion's applications in the fall of 1992. (*Id.* at 6.) Consequently, the court dismissed the case as moot in 1993. (*Id.* at 7.)

In 1994, Larson transferred his 156 claims to Crippled Horse Investments Limited Partnership ("Crippled Horse"). (Defs.' Mem. in Opp'n at 12.) On September 23, 1996, defendants had yet to complete processing the applications, and Crippled Horse commenced a second action against the Department and the Bureau of Land Management ("BLM") alleging unreasonable delay in the Department's processing of its patent applications. (Pl.'s Mem. Respecting Remedy at 14.) This suit was later stayed on the condition that BLM would file a status report every sixty days regarding its progress in processing the applications. (*Id.* at 17.)

In 1997, defendants filed a contest complaint against Application UTU-66593, which contained two of Orion's 156 claims. (Pl.'s Mem. Respecting Remedy at 14.) Defendants' contest complaint argued that the claims were invalid for lack of discovery and failure to meet

the statutory work assessment requirements. (*Id.*)  To litigate all challenges in a single contest hearing, plaintiff asked BLM to defer the contest complaint against the claims in Application UTU-66593 until BLM made contest complaints against Orion's remaining claims. (*Id.* at 15.) BLM then declared a number of the claims in Application UTU 6324 "null and void" for nonperformance of assessment work in 1931. (*Id.* at 16.)  However, at the request of Orion, BLM rescinded its decision pertaining to Application UTU 6324 and agreed to stay the contest proceeding pertaining to UTU-65593 until BLM could issue contest complaints, if necessary, against all of claims. (Defs.' Mem. in Opp'n at 13.)

In 1999, BLM stopped work on the mineral reports for Orion's claims and began a search of the local Uintah County records for work assessment affidavits concerning Orion's claims. (*Id.* at 14.)  At the time work ceased on the reports, one report had been completed and submitted for technical review, one report had been completed and contested by BLM, two reports had been drafted, but had not yet undergone technical review, and the five remaining reports had been started. (*See Id.* at 15-16.)  During the county records search, BLM discovered that all 156 claims lacked work assessment affidavits for periods of fifteen to thirty-five years between 1932 and 1970. (*Id.* at 16.)   As a result, BLM declared on September 2, 1999 that all 156 of Orion's claims were void for failing to comply with the work assessment requirements of the Mining Law of 1872.[1]  (Pl.'s Mem. Respecting Remedy at 24.)

Orion appealed this decision to the IBLA on October 4, 1999. (Defs.' Mem. in Opp'n at

---

[1] The Mining Law provides that "until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year." 30 U.S.C. § 28 (2006).

16.)  On May 10, 2004, four and a half years later, the IBLA affirmed BLM's decision.  (*Id.*)  Orion then filed a complaint in this Court challenging the IBLA's decision.  (*Id.*)  This Court granted Orion's motion for summary judgment on March 31, 2006 and ordered the parties to supplement the record as to what relief, if any, the Court should award.  (Pl.'s Mem. Respecting Remedy at 28.)

In their memorandum [43], Orion requests the Court to compel defendants to expedite the processing of Orion's mining applications to remedy an unreasonable delay in the processing of the applications at issue.  (*Id.*)  Specifically, Orion seeks the Court to compel the defendants to either issue the patents for Orion's mining claims or explain why defendants will not issue the patents within sixty days of this order.  (Pl.'s Proposed Order at 1.)  Additionally, Orion requests this Court to retain jurisdiction over the matter if defendants fail to act within sixty days.[2]  (Pl's Mem. Respecting Remedy. at 2.)  In their opposition [46], defendants argue that the matter should be remanded to BLM for agency processing without judicial intervention.  (Def.'s Mem. in Opp'n at 18.)

III.    ANALYSIS

The Administrative Procedure Act ("APA") provides that courts, upon reviewing agency action, "shall compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  Courts possess the power to review claims of unreasonable delay because "the benefits of agency expertise . . . will never be realized if the agency never takes action."  *Telecomms.*

---

[2] In Orion's Memorandum [43], Orion asks the Court to adopt Proposed Order [45]. Orion abandons this requested relief in Orion's Reply [47] and proposes a new order respecting remedy.  However, in Orion's Response to defendants' Sur-Reply [55], Orion abandons the relief requested in their reply [47], and asks the Court to order the original relief it requested in Proposed Order [45].  (Pl.'s Resp. to Sur-Reply at 10.)

*Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) (hereinafter *TRAC*). To constitute an unreasonable delay, the agency must have a "duty to act" which has been unreasonably delayed in the agency's execution of that duty . *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004). Moreover, for an unreasonable delay to warrant a court to order agency action with a specific time frame, the unreasonable delay must be "egregious." *TRAC,* 750 F.2d at 79. As a result, courts rarely compel an agency to render an immediate decision on an issue. *See In re Barr Labs Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991) (finding that courts only compel agency action in "exceptionally rare cases"). Rather, courts allow agencies to set their own priorities on account of their "unique—and authoritative—position" to "allocate [their] resources in the optimal way." *Id.*

Accordingly, to determine whether an agency action has been unreasonably delayed, the Court must examine the following factors:

> First, "the court should ascertain the length of time that has elapsed since the agency came under a duty to act," . . . Second, "the reasonableness of the delay must be judged 'in the context of the statute' which authorizes the agency's action. . . . Third, the court must examine the consequences of the agency's delay. . . . Finally, the court should give due consideration in the balance to "any plea of administrative error, administrative convenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources."

*In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992) (internal citations omitted).

Upon a finding of unreasonable delay, a court will grant appropriate equitable relief to

remedy the delay. *See Cobell v. Norton,* 240 F.3d 1081, 1108 (2001) (upholding a district court's specific relief after finding unreasonable agency delay). However, a court has the power to grant equitable relief even absent a finding of unreasonable delay. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003) (stating that even if a district court does not find unreasonable delay, it may retain jurisdiction to ensure that the agency proceeds with diligence).

    A.    Duty to Act

Administrative agencies cannot decide which duties to perform and which duties to ignore, rather they must perform the duties which Congress intends them to perform. *Marathon Oil Co. v. Lujan*, 937 F.2d 498, 500 (10th Cir. 1991). Here, the Department and BLM have a Congressional duty to process oil shale mine patent applications. *See id.* (stating that Congress intends the Department of the Interior and BLM to process oil shale mining patent applications). Upon invalidating a claim, defendants' Congressional duty to process the applications ceases. *Cf. Cameron v. United States*, 252 U.S. 450, 460 (1920) (explaining that the Secretary of the Interior has a duty to recognize valid claims and eliminate invalid claims).

Due to administrative and Congressional moratoria, defendants' duty to process Orion's applications did not arise until after a court ruling in 1992 which ordered defendants to perform their duty and process Orion's applications. (Pl.'s Mem. Respecting Remedy at 2, 5.) Defendants then performed their duty until all claims were declared void in 1999. (*See generally id.* at 5-25.) BLM's voidance of the claims completed its processing of Orion's applications and ended its expenditure of additional resources on processing Orion's applications. (Defs.' Sur-Reply at 3.) Accordingly, the Court finds that defendants' initial duty to process Orion's

6

applications ended in 1999 when defendants voided Orion's claims for lack of assessment work performed on the claims for various periods between 1932 and 1970. *See Cameron*, 252 U.S. at 460 (stating that the Department of the Interior eliminates all invalid claims).

Defendants' duty to process Orion's applications resumed, however, following this Court's March 31, 2006 Opinion in which the Court found that defendants' challenges to Orion's claims for lack of work assessment failed as arbitrary and capricious. (Mem. Op. at 11.) Accordingly, the Court finds that defendants' duty to process Orion's applications consists of two separate periods, one period spans from 1992 until the claims were voided in 1999 and the other spans from the March 31, 2006 opinion to the present.

> B.   Reasonableness of the Delay

The reasonableness of defendants' delay can only be measured during the periods in which defendants had a duty to act. As the Court explained above, defendants had a duty to process Orion's applications from 1992 until 1999, and that duty resumed following the Court's March 31, 2006 opinion. Any delay between 1999 and 2006, however, cannot be deemed unreasonable because defendants did not have a duty to process Orion's applications and could not legally issue Orion's patents. *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 508 (9th Cir. 1997) (explaining that a claimant has no rights to a patent if the Secretary of the Interior challenges the validity of the patent during the application process). Accordingly, the Court will now determine the reasonableness of defendants' delay for both periods in which defendants had a duty to act. The Court will examine the reasonableness of the delay within the context of the statute, consider any practical difficulties involved with processing Orion's applications, and determine the consequences, if any, caused by the delay. *In re Int'l Chem. Workers Union*, 958

F.2d at 1149.

        1.        Within the Context of the Statute

Congress has authorized the defendants to process oil shale mine patents. *Marathon Oil Co.*, 937 F.2d at 500. As part of this process, Congress instructs the defendants to challenge claims which may be invalid to avoid issuing mining patents to invalid claims.[3] If, during the application process, defendants invalidate a claim, the applicant has no right to that claim. *See United States v. Locke*, 471 U.S. 84, 105 (1985) ("[N]o right arises from an invalid claim of any kind.").

Due to both a Congressional and an administrative moratorium that prohibited defendants from processing applications for oil shale mining patents, defendants did not begin to process Orion's applications until a court ordered them to do so in 1992. (*See* Pl.'s Mem. Respecting Remedy at 3, 5-6.) Following that decision, defendants fulfilled their duty and processed Orion's applications as required by Congress. (*See generally id.* at 7-25.) Concerned that a decision had not yet been made, Orion filed a lawsuit in 1996 to compel defendants to expedite the processing of Orion's applications. (*Id.* at 14.) This matter was resolved when the parties agreed to stay further proceedings provided that defendants provide progress reports to Orion every sixty days to prevent further delays. (*Id.* at 17.) Orion did not contest the delays any further. In 1999, defendants voided all 156 of Orion's claims. (*Id.* at 24.) Accordingly, the Court finds that

---

[3]In the Mining Law, Congress declared that a patent applicant must complete annual work assessment to prevent the claim from being "open to relocation." 30 U.S.C. § 28 (2007). To ensure that the annual assessment work has been completed and that the claims are not open, BLM conducts a courthouse records search during the processing of patent applications to locate records demonstrating that the requirement has been satisfied.

defendants processed Orion's applications as required by statute without unreasonable delay from 1992 until the applications were voided in 1999.

Once defendants determined that Orion's claims were invalid, defendants' duty within the context of the statute ceased, and defendants could not legally issue Orion's patents until after the Court's March 31, 2006 opinion. *See Independence Mining Co.,* 105 F.3d at 508 (explaining that a patent applicant has no rights to a challenged claim). Therefore, the delay from 1999 until 2006 cannot be considered unreasonable.

Following the Court's March 31, 2006 opinion, defendants' statutory duty to process Orion's applications resumed. To date, however, any delay in the application process has yet to reach the point of being unreasonable and "egregious." *TRAC*, 750 F.2d at 79. Accordingly, the Court finds that any delay to date has not been unreasonable within the context of the statute. Further substantial delay, however, may reach the point of being egregious. Therefore, defendants must now complete the processing on the remaining eight applications within a reasonable period of time. *See MCI Telecomms. Corp. v. FCC,* 627 F.2d 322, 340 (D.C. Cir. 1980) (stating that a reasonable time for agency action "encompass[es] months, occasionally a year or two, but not several years or a decade").

    2.    Practical Difficulties and Limited Resources

When confronted with practical difficulties in executing a task and the need to prioritize limited resources, administrative agencies are in the best position to allocate their resources to complete the task in a timely manner. *See In re Barr Labs*, 930 F.2d at 76. In the present matter, defendants have faced practical difficulty in processing Orion's applications results from the

difficulty of processing Orion's applications, which total over 23,000 acres, and the need to prioritize defendants' limited resources. (Defs.' Mem. in Opp'n at 24.)

To determine the validity of Orion's claims, defendants must undertake a two step process consisting of a field examination of the site and the preparation of mineral report. (*Id.* at 4.) The time to complete both tasks hinges upon the size of the claim and available resources. (*Id.*) Because Orion's claims were so large[4] and defendants had limited resources,[5] the processing of the applications from 1992 until 1999 took much longer than defendants anticipated, and any delay during that period was not unreasonable. (*See* Pl.'s Mem. Respecting Remedy at 7.)

In fact, the task of processing Orion's applications was so large that, defendants had not yet finalized all nine mineral reports when they voided Orion's claims on January 15, 1999 for failing to meet the necessary work assessment requirements. (*Id.* at 16.) The field work for all nine claims was complete, but only one mineral report had undergone technical review. (*Id.* at 16.) Of the remaining eight reports, one was completed and contested by BLM, two reports had been drafted, and five had been started. (*Id.* at 16.) Accordingly, the remaining reports need to be finalized and submitted for technical review before defendants can issue a final decision on Orion's claims. *See Independence Mining Co.*, 105 F.3d at 508 ("The Secretary [of the Interior]

---

[4] In their opposition, defendants state that only 2% of patent applications received in the past 25 years have consisted of more than 2,600 acres. (Defs.' Mem. in Opp'n at 24.)

[5] In light of the limited resources of defendants, Congress enacted legislation which allowed patent applicants, such as Orion, to fund a third-party contractor to conduct field examination and prepare mineral reports. Interior and Related Agencies Appropriations Act for the fiscal year ending September 30, 1996, Pub. L. No. 104-134, 110 Stat.1321 (Apr. 26, 1996). Orion did not avail itself to this opportunity.

has no . . . duty to issue a patent prior to validity determination."). Specifically, defendants must submit the two reports with finished mineral reports for technical review and finalize and submit the five remaining reports for technical review. (Sokolosky Decl. ¶ 7.) In addition, the applications must be reviewed by and acknowledged by the BLM director. (Defs.' Mem. in Opp'n at 26.)

Moreover, despite knowing that most of the applications were incomplete, Orion believed that the lack of assessment work was the only reason for the voidance of all nine claims and that defendants had no other grounds to void the claims.[6] This belief was based upon Orion's interpretation of defendants' statements that BLM had completed processing Orion's applications and would not assert additional grounds to invalidate Orion's claims. (Pl.'s Reply to Defs.' Opp'n at 2.) In refuting Orion's interpretation, defendants contend that the statements meant that defendants completed processing Orion's applications when they were declared void. (Defs.' Sur-Reply at 3.) Moreover, defendants were not going to spend additional resources to process and raise challenges against void applications. (*Id.*)

The Court finds defendants' interpretation more reasonable because defendants had been submitting progress reports to Orion which detailed the progress of the nine applications. (*See* Pl.'s Mem. Respecting Remedy at 18-25.) Orion knew that defendants had not completed the reports for all nine claims. Consequently, defendants could not have challenged all deficiencies in Orion's claims. Moreover, defendants had previously issued contest complaints against two of

---

[6]Orion argues that 10th Circuit precedent requires an agency to bring all challenges to an oil shale patent application in a single contest proceeding. Orion fails to provide a citation for this precedent.

Orion's claims in 1997.  (*Id.* at 14.)  Therefore, it was not unreasonable to believe that defendants may challenge other deficiencies in Orion's unfinished applications.

Defendants have had practical difficulties in processing Orion's patent applications because the applications cover over 23,000 acres of land.  Moreover, defendants have had the need to prioritize competing priorities with limited resources.  Accordingly, the Court finds that the delay in processing Orion's patent applications has not been unreasonable.

### 3. Consequences of the Delay

In analyzing the consequences of agency delay, economic harm is more tolerable than harm to human health and welfare.  *In re Am. & Idaho Rivers United*, 372 F.3d at 418.  Here, Orion only alleges that it has suffered economic harm as a result in the delay in the processing of Orion's applications.  (*See* Larson Aff. ¶ 3.)  Consequently, this case is distinguishable from other cases in which courts have required agency action to occur within a specific time frame because, in those cases, agency inaction could harm human health and welfare.  *See Id.* at 420 (mandating a response within forty-five days because the harm of inaction may result in the possible extinction of a species); *see also In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, (D.C. Cir. 1999) (retaining jurisdiction over the matter until the Mine Safety and Health Administration promulgate new standards to protect miners from harmful gaseous emissions); *In re Int'l Chem. Workers Union*, 958 F.2d at 1150 (explaining that the serious health risks associated with cadmium exposure warranted setting a deadline for finalizing new requirements for handling cadmium).

Moreover, any economic harm suffered by Orion is lessened by the fact that a patent is

not required to begin mining operations on a claim. *Independence Mining Co.*, 105 F.3d at 509 (citing *Locke*, 471 U.S. at 86). Therefore, while Orion has undoubtedly suffered an economic harm, Orion has not suffered a complete economic loss by not yet receiving a mining patent. Accordingly, the Court finds that the defendants' delay is not unreasonable because it has not adversely affected human health and welfare.

    C.    Relief

When confronted with the task of awarding appropriate relief, a court has broad equitable powers. *See Cobell*, 240 F.3d at 1108 (explaining that a court has full equitable powers to grant relief unless Congress specifically restricts that power). The breadth of this power allows a court to award such equitable relief as it deems appropriate even without a finding of unreasonable delay. *See Mashpee Wampanoag Tribal Council,* 336 F.3d 1094 at 1102.

Here, the Court finds that defendants' delay has not been unreasonable. Orion, however, has awaited a final decision on its oil shale mining patent applications for an exceptionally long period of time. Defendants have now been under a new duty to process Orion's applications for a year, and to prevent further and possibly unreasonable delay, defendants must process Orion's remaining applications expeditiously. It has been nearly twenty years since Orion filed its first patent application, and Orion deserves a final decision on whether or not its patents will be issued. Accordingly, this Court, pursuant to its power to grant equitable relief, will retain jurisdiction over this matter until defendants issue a final decision on Orion's applications. Specifically, this Court will order as follows:

    1.    Defendants shall provide Orion and the Court with quarterly status reports

       detailing the progress defendants have made in processing Orion's oil shale mining patent applications. The first report shall be due three months after the date of this Order.

2.   Defendants' quarterly reports shall include (1) a detailed description of all significant actions undertaken, (2) staff positions and hours spent processing Orion's applications since the preceding report, and (3) the specific tasks performed by each staff person. The first report shall include all actions taken since this Court's March 31, 2006 opinion, and a listing of staff positions, time spent processing Orion's applications, and specific tasks performed by each staff person from this date forward. In addition, defendants shall provide a schedule of actions expected to be undertaken during the next three month period.

3.   Upon reasonable request by Orion or the Court, defendants shall provide within thirty days any additional information to explain or supplement their quarterly reports.

4.   If Orion is unable to obtain additional information from defendants through informal requests, Orion may petition the Court to order defendants to provide such information.

## III.   CONCLUSION

The Court finds that any delay suffered by Orion has not yet been unreasonable for the following reasons: (1) defendants processed Orion's applications during the two periods in which they had a duty to do so; (2) defendants' delay has not been unreasonable within the context of

the statute authorizing their action; (3) any harm caused by the delay was economic, and not harmful to human health and welfare; and (4) defendants' delay results from practical difficulties due to the large size of Orion's claims and the need to prioritize a competing workload with limited resources.

The Court, however, recognizes that Orion has waited for a final decision on its patent applications for eighteen years. Therefore, to ensure that defendants proceed with diligence, the Court will retain jurisdiction over this matter and will order defendants to submit quarterly status reports to this Court detailing the steps which defendants have taken to complete processing Orion's oil shale mining patent applications.

Accordingly, the Court

ORDERS that plaintiff's Memorandum [43] Respecting Remedy is GRANTED IN PART and DENIED IN PART. Specifically, it is

ORDERED that plaintiff's request for defendants to issue a decision within sixty days is DENIED; it is further

ORDERED that the case is remanded to the Department of the Interior for further proceedings not inconsistent with this Court's March 31, 2006 Order and this Order; it is further

ORDERED that plaintiff's request for the Court to retain jurisdiction over this case until final agency action on all of plaintiff's mineral patents is GRANTED; it is further

ORDERED that defendants shall provide quarterly status reports to Orion and the Court explaining the progress that defendants have made in processing Orion's applications. Defendants' first status report is due three months after the date of this Order; it is further

ORDERED that defendants' quarterly reports shall include (1) a detailed description of all significant actions undertaken, (2) staff positions and hours spent processing Orion's applications since the preceding report, and (3) the specific tasks performed by each staff person. The first report shall include all actions taken since this Court's March 31, 2006 opinion, and a listing of staff positions, time spent processing Orion's applications, and specific tasks performed by each staff person from this date forward.  In addition, defendants shall provide a schedule of actions expected to be undertaken during the next three month period; it is further

ORDERED that upon reasonable request by Orion or the Court, defendants shall provide any additional information to explain or supplement their quarterly reports within thirty days of such a request; and it is further

ORDERED that Orion may petition the Court to order defendants to provide such information if Orion is unable to obtain additional information from defendants through informal requests.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, June 28, 2007.